So Ordered.

Signed this 23 day of June, 2022.



_____

Diane Davis

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

DEANNA DEFAZIO,                         Chapter 7
                                             Case No.: 20-60181-6
*Debtor*.
_____

In re:

PRESBYTERIAN HOME FOR CENTRAL NY, INC.,     Adv. Pro. No.: 20-80009-6

*Plaintiff*,

v.

DEANNA DEFAZIO,

*Defendant*.
_____

APPEARANCES:

FELT EVANS LLP                         JAY G. WILLIAMS, III, ESQ.
*Attorney for Plaintiff*
4-6 North Park Row
Clinton, New York 13323

OFFICE OF MARK A. WOLBER           MARK A. WOLBER, ESQ.
*Attorney for Defendant*
239 Genesee St., Suite 307
Utica, New York 13501

Honorable Diane Davis, United States Chief Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION AND PROCEDURAL BACKGROUND

This matter comes before the Court following a trial in this adversary proceeding, in which Plaintiff, Presbyterian Home for Central NY, Inc. (hereinafter "Plaintiff") seeks a determination that the debt of $43,367.71 owed to Plaintiff by Deanna DeFazio (hereinafter "Defendant" and together with Plaintiff, "the Parties") is non-dischargeable under 11 U.S.C. §§ 523(a)(4) and 523(a)(6).[1] Plaintiff is a nursing home, and alleges that Defendant failed to properly deliver funds due to Plaintiff while Defendant was acting as her mother's fiduciary. On February 20, 2020, Defendant initiated her bankruptcy case, listing her debt to Plaintiff as a nonpriority unsecured claim. On May 1, 2020, Plaintiff commenced the present adversary proceeding. Defendant filed an answer to the complaint on May 22, 2020, in which she denied the material allegations, and raised a number of affirmative defenses. On July 30, 2021, the parties submitted pre-trial statements, including lists of witnesses and exhibits, and a trial was held on August 10, 2021. At the conclusion of the trial, Defendant moved to dismiss both causes of action. The parties submitted post-trial briefs, and on September 28, 2021, the Court took the matter under advisement.

For the reasons set forth below, Defendant's motion to dismiss is granted with respect to the claims asserted under §§ 523(a)(4) and 523(a)(6).

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the Parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a), 1334(b), 157(a), and 157(b)(2)(A), (I), and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

---

[1] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (2020), 11 U.S.C. § 101 *et seq.*

## STANDARD OF REVIEW

At the close of the trial, Defendant made an oral motion to dismiss both causes of action, without making reference to a specific statute. (Trial 32:50. ECF No. 28.) The Court will treat this as a motion to dismiss under Federal Rule of Civil Procedure 41(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7041. FED. R. CIV. P. 41(b); FED. R. BANKR. P. 7041(b). Such a decision operates as an adjudication on the merits, rather than an exercise of discretion by the court. *In re Zupancic*, 38 B.R. 754, 761 (B.A.P. 9th Cir. 1984) (citing *White v. Rimrock Tidelands, Inc.*, 414 F.2d 1336 (5th Cir. 1969)). A Rule 41(b) motion is not a motion for a directed verdict, so the court must weigh the evidence and may consider the witnesses' credibility. *Chris Berg, Inc. v. Acme Mining Co.*, 893 F.2d 1235, 1238 n. 2 (11th Cir. 1990) (citing *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986)).

A creditor seeking to establish that a debt is nondischargeable under § 523(a) must do so by the preponderance of the evidence. *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). Furthermore, given the Bankruptcy Code's primary purpose in providing a fresh start to debtors, "exceptions to discharge are construed narrowly." *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 167 (2d Cir. 1999) (citing *In re Black*, 787 F.2d 503, 505 (10th Cir. 1986)).

## FACTS

The following recitation of facts has been drawn from the briefs submitted by the Parties, the trial held on August 10, 2021, and submissions on the Court's docket.

Defendant entered into a series of agreements both with her mother, Nancy Gelfuso, and Plaintiff, to facilitate her mother's admission to Plaintiff's nursing home. Defendant first agreed to serve as her mother's power of attorney. (DeFazio Dep. 8:15-17. ECF No. 26, Ex. G.) Ms.

Gelfuso also transferred control of her funds to Defendant in an attempt to become eligible for Medicaid. (Pls. Pre-Trial Sub. ECF No. 26.) Defendant then signed a series of contracts with Plaintiff as her mother's 'Responsible Party,' which created the contractual relationship from which this litigation arose. (Admission Agreement. ECF No. 26, Ex. A.)

The terms of the Admission Agreement signed by Defendant stated that if Medicaid coverage was denied to Ms. Gelfuso due to the transfer of funds, then Defendant would return those funds to Ms. Gelfuso so that they could be paid to Plaintiff. (Admission Agreement, 9. ECF No. 26, Ex. A.) Additionally, the terms of the 'NAMI (Net Available Monthly Income) Agreement,' likewise signed by Defendant, stated that Defendant was responsible for making all NAMI payments on her mother's behalf using her mother's funds. (Admission Agreement, 25. ECF No. 26, Ex. A.) Medicaid coverage for Ms. Gelfuso was denied due to her uncompensated transfer of funds to Defendant, and Defendant failed both to remit the funds and to make the requisite NAMI payments to Plaintiff. As a result, Ms. Gelfuso's account accrued an unsatisfied balance of $43,367.71. (Aff. of Confession, 1-2. ECF No. 26, Ex. F.) Defendant instead disbursed her mother's funds to her own children, per her mother's instructions, and after consulting with her mother's attorney, Robert Hilton. (DeFazio Dep. 17:22-18:2. ECF No. 26, Ex. G.)

Following the failure to remit the funds, Plaintiff filed suit against Defendant in New York Supreme Court on October 4, 2017. (State Court Compl. ECF No. 26, Ex. D.) Plaintiff moved for summary judgment in that action, and, in an order on May 7, 2019, the state court granted Plaintiff's motion and determined that Defendant had violated the terms of the Admission Agreement. (Aff. of Confession. ECF No. 26, Ex. F.) Defendant then signed an Affidavit of Confession of Judgment on July 11, 2019, in which she acknowledged a debt to Plaintiff in the amount of $43,367.71, arising from said breach. (Aff. of Confession. ECF No. 26, Ex. F.) On

4

February 20, 2020, Defendant filed a petition under Chapter 7 of the Bankruptcy Code with this Court. (Compl. ¶ 12. ECF No. 1.) Shortly thereafter, on May 1, 2020, Plaintiff filed this adversary proceeding. (Compl. ECF No. 1.)

## DISCUSSION

### A. Section 523(a)(4)

Section 523(a)(4) provides that a debtor may not discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Court must consider two questions to determine whether Defendant's debt is nondischargeable under § 523(a)(4) for defalcation while acting in a fiduciary capacity. First, the Court must determine whether Defendant stood in a fiduciary relationship to Plaintiff for the purposes of § 523(a)(4), and second, whether Defendant committed a defalcation in the course of that fiduciary relationship. *See Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998).

The Court must first make the threshold determination of whether a fiduciary relationship existed between Defendant and Plaintiff at the time of the alleged defalcation. *Econ. Dev. Growth Enters. Corp. v. McDermott*, 478 B.R. 123, 127 (N.D.N.Y. 2012) (citing *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999). Objections to the dischargeability of debts under § 523(a) must be brought by the creditor whose debt is claimed to be non-dischargeable. *Hass v. Hass (In re Hass)*, 273 B.R. 45, 50 (Bankr. S.D.N.Y. 2002). Arising out of this concept is the principle that the fiduciary relationship referenced in § 523(a)(4) must run directly from the debtor to the creditor. *See, e.g.*, *Zohlman*, 226 B.R. at 772 (requiring that "the Debtor stood in a fiduciary relationship *to the Creditor*") (emphasis added); *Pappas v. Gucciardo (In re Gucciardo)*, 577 B.R. 23, 33 (Bankr. E.D.N.Y. 2017) ("the fiduciary duty in question must be owed to the plaintiff, not to another party."); (*Lexington Health Care Ctr. Of Elmhurst v.*

5

*McDade (In re McDade)*, 282 B.R. 650, 660 (Bankr. N.D. Ill. 2002) (finding a debt dischargeable because "the Creditor was not the intended beneficiary of the fiduciary relationship"); *Altercare of Navarre Ctr. For Rehab. & Nursing Care, Inc. v. Donley (In re Donley)*, 2014 Bankr. LEXIS 1682, at *29 (Bankr. N.D. Ohio Apr. 17, 2014) (finding that "a fiduciary relationship must exists [sic] between Debtor and [Creditor]").

In the present case, the fiduciary relationship ran from Defendant to her mother, rather than to Plaintiff. Defendant acknowledges that she was her mother's power of attorney and had a responsibility to make payments to Plaintiff on her mother's behalf. (DeFazio Dep. 9:3-8. ECF No. 26, Ex. G.) Moreover, Defendant signed the Admission Agreement as Ms. Gelfuso's 'Responsible Party.' Yet, a fiduciary relationship with one party that references a simple contractual relationship to a third-party beneficiary is not enough to establish a fiduciary relationship with that third-party beneficiary. In *In re Parks*, a case with nearly identical operative facts to the present proceeding, the court stated that "[t]he fact that the Debtor had a fiduciary duty to [her father] does not, ipso facto, under the subsequent Admission Agreement, extend or bootstrap that duty to third-party creditors..." *Silver Care Ctr. v. Parks (In re Parks)*, 2007 Bankr. LEXIS 2372, at *47 (Bankr. D. N.J. July 10, 2007) (citing *McDade*, 282 B.R. at 660). Although an express fiduciary relationship arose from Defendant's power of attorney for her mother, this does not automatically create a fiduciary relationship between Plaintiff and Defendant. Such a relationship could still arise if certain other conditions are met.

The broad, general definition of fiduciary, "involving confidence, trust, and good faith, is not applicable in dischargeability proceedings under § 523(a)(4)." *Zohlman*, 226 B.R. at 772 (citing *Peerless Ins. Co. v. Casey (In re Casey)*, 181 B.R. 763 (Bankr. S.D.N.Y. 1995)). Instead, the term 'fiduciary' is a matter of federal law which is informed by state law. Federal law "sets the

6

outer boundaries of the defalcation exception, while state law may, through lesser or greater regulation of fiduciary obligations, affect the application of the provision." *In re Hayes*, 183 F.3d at 166-67; *see also In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) ("If…a fiduciary is anyone whom a state calls a fiduciary…states will have it in their power to deny a fresh start to their debtors by declaring all contractual relations fiduciary."). Furthermore, § 523(a)(4) applies to express or technical trusts, but not cases where "the existence of the trust is created merely on the basis of wrongful conduct (a trust *ex maleficio*)". *Zohlman*, 226 B.R. at 772 (citing *Onbank & Trust Co. v. Siddell (In re Siddell)*, 191 B.R. 544 (Bankr. N.D.N.Y. 1994)). Since there is no explicit trust language in the Admission Agreement between Defendant and Plaintiff, there is no express trust present here.

In addition to an express trust relationship between the debtor and creditor, a trust, and its concomitant fiduciary relationship, may arise when the position of the parties involves "a difference in knowledge or power between fiduciary and principal which…gives the former a position of ascendance over the latter." *Hayes*, 183 F.3d at 167 (citing *Marchiando*, 13 F.3d at 1116). This high standard is not satisfied by "a mere commercial relationship…what is key is the intent to create a trust relationship rather than a contractual one." *Shearson Lehman Hutton v. Schulman (In re Schulman)*, 196 B.R. 688, 698 (citing *In re Gans*, 75 B.R. 474, 489 (Bankr. S.D.N.Y. 1987). Caselaw indicates that a formalized relationship with well understood duties and a high degree of sophistication are all hallmarks of this type of fiduciary relationship. *See, e.g.*, *Hayes*, 183 F.3d 162 (attorney – client relationship, "although not usually involving a technical trustee or express trust, has long been understood to be a fiduciary relationship within the meaning of the defalcation exception."); *In re Bernard*, 87 F.2d 705 (2d Cir. 1937) (finding an equitable fiduciary duty between corporate officers and their corporation); *Zohlman*, 226 B.R. 767 (finding

that partners stand in a fiduciary capacity to one another). Unlike each of the above cases, Defendant here was not in a position of greater knowledge or power than Plaintiff, nor was their relationship of the kind as those outlined above. Defendant signed a standardized, non-negotiable contract as her mother's 'Responsible Party' to help Ms. Gelfuso gain access to the nursing home. (Admission Agreement, 18. ECF No. 26, Ex. A.) Based upon the record, it appears that Defendant read and understood little of the paperwork prepared by Plaintiff, and she largely delegated the management of her relationship with Plaintiff to her mother's attorney. (Trial 22:30. ECF No. 28.) Unlike an attorney – client relationship, or any of the others discussed above, Defendant never intended to enter into anything more than a traditional contractual relationship. A power or knowledge imbalance did not exist between the parties in this case. As such, there was no fiduciary relationship running from Defendant to Plaintiff.

Plaintiff cites to a number of cases in an attempt to convince this Court that Defendant owed a fiduciary duty to Plaintiff. None of these cases persuade the Court that a fiduciary relationship existed. For example, in *In re Watterson*, the administrator of an estate owed a fiduciary duty to the creditors of that estate, despite the fiduciary duty initially running from the administrator to the estate. *Chitester v. Watterson (In re Watterson)*, 524 B.R. 445 (Bankr. E.D.N.Y. 2015). This case, however, is unavailing, as that fiduciary duty arose from a state statute, specifically the New York Surrogate's Court Procedure Act § 1306(3). *Id.* at 451.

In *Lewis v. Shaw*, one judge opined that a narrow understanding of what constitutes 'fiduciary capacity' would undermine the intent of the law, and that "[t]he provisions of the Bankruptcy Law were not…intended to permit such a palpable wrong to be successfully consummated". *Lewis v. Shaw*, 122 A.D. 96, 101 (4th Dept. 1907) (McLennan, J., dissenting). While undoubtably powerful language, Plaintiff neglects to state that it is borrowed from the

dissenting judge's opinion. The majority in *Shaw* held the opposing view, namely that "the Bankrupt Act would have a very limited operation if the language of [the defalcation exception] embraced cases of such general fiduciary incidents." *Shaw*, 122 A.D. at 99. It is worth noting that this case concerns a predecessor of § 523(a)(4), as it was decided in 1907, a full 71 years prior to the enactment of today's Bankruptcy Code, and interpreted the Bankruptcy Act of 1898. Plaintiff goes on to allege that "recent caselaw affirms that a discharge in bankruptcy was held to be no defense to a judgment or an indebtedness created by…defalcation" in a litany of cases. These cases are neither recent nor pertinent, as they were decided between 1932 and 1943.

Even had Plaintiff established that a fiduciary relationship ran from Defendant to Plaintiff, that would only answer the threshold question. Plaintiff still needs to establish that Defendant committed a defalcation in the course of this fiduciary relationship. For a debtor's actions to rise to defalcation, it requires a "culpable state of mind, specifically, knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 102 (2d Cir. 2019) (citing *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013)) (internal quotation marks omitted). The court must determine "if a fiduciary consciously disregarded or was willfully blind to a substantial and unjustifiable risk that his conduct would turn out to violate a fiduciary duty." *Snyder*, 939 F.3d at 104 (citing *Bullock*, 569 U.S. at 273-74) (internal quotation marks omitted).

Defendant here, while hardly a model of financial acumen, did nothing so egregious as to rise to the prescribed standard required to make a finding for defalcation. Defendant, in both her deposition and at trial, demonstrated a lack of knowledge regarding the management of her mother's finances. Defendant testified that she simply passed along documents relating to her mother's care to the attorney for Ms. Gelfuso's estate, Mr. Hilton. (Trial 25:00. ECF No. 28.)

9

Case 20-80009-6-dd Doc 32 Filed 06/23/22 Entered 06/23/22 14:57:13 Desc Main
Document    Page 10 of 15

During her time as her mother's power of attorney, Defendant did not even maintain records regarding her mother's accounts. (DeFazio Dep. 10:25-11:4. ECF No. 26, Ex. G.) Defendant's lack of knowledge regarding Ms. Gelfuso affairs was so extensive that she testified to having not so much as read the Admission Agreement she signed as the 'Responsible Party.' (DeFazio Dep. 22:8-10. ECF No. 26, Ex. G.) Defendant rarely took active steps to administer her mother's finances and testified that she made the disbursements of her mother's funds to her own children upon the direct request of Ms. Gelfuso, after Mr. Hilton allegedly assured her that "everything was taken care of after I did everything he told me." (DeFazio Dep. 17:22-18:2. ECF No. 26, Ex. G.) Defendant appears to have viewed her responsibilities as her mother's power of attorney as limited to passing along documents to Mr. Hilton, and then acting as directed by Mr. Hilton and her mother. As a result of this arrangement, Defendant did not have knowledge of the improper nature of her purported fiduciary behavior, and while her total reliance on the advice of counsel was far from ideal, it was also far from willful blindness to an unjustifiable risk that her conduct would violate her fiduciary duty to her mother.

Even if Plaintiff had established a fiduciary relationship between Defendant and Plaintiff, Defendant did not commit defalcation, and Plaintiff's cause of action must fail. Accordingly, Defendant's motion to dismiss is granted on Plaintiff's first cause of action under § 523(a)(4).

**B. Section 523(a)(6)**

Section 523(a)(6) provides that a debtor may not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Willful and malicious are separate elements, both of which must be satisfied before a debt is held to be nondischargeable under this section. *Ladouceur v. Boutin (In re Boutin)*, 2016 Bankr. LEXIS 2974 (Bankr. N.D.N.Y. August 11, 2016).

To establish the requisite willfulness within the meaning of § 523(a)(6), the plaintiff must demonstrate "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 105 (2d Cir. 2019) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). As a result, injuries that are inflicted "negligently or recklessly are an insufficient basis to deny a debtor a discharge under the statute." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 625 (E.D.N.Y. 2017) (citing *Geiger*, 523 U.S. at 64). A defendant intentionally causes an injury when "the actor knows that the consequences are certain, or substantially certain, to result from his act." *Salim*, 577 B.R. at 625 (quoting *Margulies v. Hough (In re Margulies)*, 566 B.R. 441, 452 (S.D.N.Y. 2014)). Courts throughout the Second Circuit generally apply a subjective standard of intent when evaluating whether a defendant was substantially certain that their action would cause an injury to the plaintiff. *Margulies*, 517 B.R. at 453 (discussing the circuit split between the Sixth, Eighth, Ninth and Tenth Circuits, which apply a subjective standard and the Fifth Circuit, which applies an objective standard).

For Plaintiff to establish that Defendant acted willfully, it must establish that Defendant had a subjective knowledge that giving the funds to her children would injure Plaintiff. Plaintiff makes a single conclusory statement in their complaint that Defendant acted willfully and maliciously, and otherwise fails to provide facts or point to caselaw sufficient to support its cause of action under § 523(a)(6). (Compl. ¶ 22. ECF No. 1.) Plaintiff fails to so much as reference the relevant statute in their Memorandum of Law. (Pls. Memo. Of Law. ECF No. 25.) Defendant, on the other hand, testified, in her deposition and at trial, that she delegated the financial decisions relating to her mother's funds to Mr. Hilton. (Trial 23:45. ECF No. 28.) Defendant failed to properly keep records of her mother's finances, she denied reading the contracts she signed with Plaintiff, and was generally disinterested in managing her mother's affairs. (DeFazio Dep. 12:25-

13:2; 16:6-14. ECF No. 26, Ex. G.) Instead, she chose to follow Ms. Gelfuso's direction and trust the advice of counsel. (DeFazio Dep. 17:22-18:2. ECF No. 26, Ex. G.) In the absence of any meaningful contradictory evidence from Plaintiff, this Court must accept that Defendant lacked the requisite knowledge that her actions would cause injury to Plaintiff. Accordingly, the Court finds that Defendant did not act willfully within the meaning of the term as it is used in § 523(a)(6).

While the Supreme Court has not established a single standard for the malice requirement, the accepted definition within the Second Circuit is an act that is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Northeast Remarketing Servs. v. Guthier (In re Guthier)*, 2010 Bankr. LEXIS 2128, at *10 (Bankr. N.D.N.Y. April 9, 2010) (quoting *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996)). There is no requirement of a specific intent to harm or injure, as malice may be actual or implied. *United States v. Shelmidine (In re Shelmidine)*, 519 B.R. 385, 393 (Bankr. N.D.N.Y. 2014). Implied malice is judged "by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Pappas v. Gucciardo (In re Gucciardo)*, 577 B.R. 23, 37 (Bankr. E.D.N.Y. 2017) (quoting *Stelluti*, 94 F.3d at 87). Courts will find implied malice when "anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *Owens v. Powell (In re Powell)*, 567 B.R. 429, 434 (Bankr. N.D.N.Y. 2017) (quoting *Aldus Green Co. v. Mitchell (In re Mitchell)*, 227 B.R. 45, 51 (Bankr. S.D.N.Y. 1998)).

While there is no strict set of requirements that must be met before a court may determine that a defendant acted with implied malice, it is most often found when the defendant's injurious acts provide no economic profit or similar benefit to the defendant. *Labbadia v. Martin (In re Martin)*, 2019 Bankr. LEXIS 2415, at *32 (Bankr. D. Conn. August 2, 2019) (quoting *Novartis*

*Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)). When there is a clear profit motive, "the underlying conduct, however deplorable, would not give rise to liability under § 523(a)(6) in the absence of some additional, aggravating conduct." *Martin*, 2019 Bankr. LEXIS 2415, at *33 (quoting *Luppino*, 221 B.R. at 700). This is because the test for nondischargeability under § 523(a)(6) is not greed, but rather malice; deplorable acts often lead to dischargeable debts. When determining the presence or absence of aggravating factors, courts conduct a fact-specific inquiry, deciding the matter on a case-by-case basis. *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009). It is natural, then, that courts consider the totality of the circumstances in making a determination. *Id.* (quoting *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008).

The wrongdoing in this case is the breach of a contractual agreement between Plaintiff and Defendant. Under these circumstances, Plaintiff must establish aggravating factors before the Court can find Defendant acted with malice. Despite this clear and onerous burden, Plaintiff fails to bring to light any potentially aggravating factors, either in the deposition of Defendant or during the direct examination of Defendant at trial, and does not allege facts or cite caselaw that support a finding of malice under § 523(a)(6).

Establishing malice in a contract violation is a difficult task, and courts often refrain from finding malice even when the defendant acted in a patently egregious manner. *See, e.g.*, *Luppino*, 221 B.R. 693 (taking bribes as a corporate officer for years in violation of one's fiduciary duties not malicious); *Martin*, 2019 Bankr. LEXIS 2415 (refusing to pay an attorney for years of work and shielding assets from said attorney not malicious); *Pappas v. Gucciardo (In re Gucciardo)*, 577 B.R. 23 (Bankr. E.D.N.Y. 2017) (repaying creditors that the defendant was related to and leaving no money to repay other creditors not malicious). When courts do find malice existed in a

13

contract breach, it is usually related to actions taken by the defendant outside of the contract breach. *See, e.g.*, *Alessi v. Alessi (In re Alessi)*, 405 B.R. 65 (Bankr. W.D.N.Y. 2009) (defendant acknowledged duty to pay $12,000 to ex-husband, and disbursed funds to others only after ex-husband began state court action to compel payment); *Salim v. VW Credit, Inc.*, 577 B.R. 615 (E.D.N.Y. 2017) (defendant attempted to obfuscate their illegal actions from creditor by denying them access to corporate records, were fully aware of their contractual obligation, and transferred funds after litigation began to family members overseas where creditor could not collect the debt); *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138 (Bankr. S.D.N.Y. 1998) (violating four separate district court orders to desist established malice in breach of contract case).

Even assuming Defendant acted willfully in failing to provide her mother's funds to Plaintiff, her actions are more similar to the former group of cases, rather than the latter group of cases. Plaintiff alleges no facts, nor does the record provide any, that indicate anything other than an ordinary breach of contract. There is no record of acrimonious dealings between Plaintiff and Defendant, attempts by Defendant to take covert actions meant to disadvantage Plaintiff, and no indication that Defendant waited until Plaintiff commenced litigation before transferring the funds to her children. Instead, Defendant's actions are analogous to those of the debtor in *In re McDermott*. There, the debtor consulted with an attorney before pursuing his chosen course of action. *Econ. Dev. Growth Enters. Corp. v. McDermott*, 478 B.R. 123 (N.D.N.Y. 2012). As Defendant testified in her deposition and at trial that she relied on the advice of counsel. While not necessary to defeat an allegation of malicious behavior, such conduct is antithetical to the deplorable acts that are the hallmark of the malice requirement.

Plaintiff has failed to establish that Defendant's breach of contract was both willful and malicious. Accordingly, Defendant's motion to dismiss Plaintiff's second cause of action under § 523(a)(6) is granted.

## **CONCLUSION**

For the forgoing reasons, the Court finds that the debt owed by the Defendant to the Plaintiff is dischargeable, and Defendant's Motion to Dismiss is hereby Granted in its entirety. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

###